UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.:   2:20-cr-000270-MHH- |
| } | SGC-1 |
| **DEVON MARTEZ EASLEY,** } | |
| } | |
| **Defendant.** } | |
| } | |
| } | |

# MEMORANDUM OPINION AND ORDER

Defendant Devon Easley has asked the Court to dismiss the charges against him in this case. (Doc. 185).[1] The charges in the superseding indictment involve two traffic stops, one by the Mountain Brook Police and one by the Birmingham Police. With respect to the Mountain Brook stop, Mr. Easley is charged with violations of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 18 U.S.C. §§ 924(c)(1)(A) and 922(g)(1). With respect to the Birmingham stop, Mr. Easley is charged with a violation of 18 U.S.C. § 922(g)(1). (Doc. 23). Mr. Easley argues that the Court should dismiss the charges against him because the attorneys for the government

---

[1] Mr. Easley has asked the Court to dismiss the claims against him several times. (*See* Docs. 29, 59, 64, 185, 203). The Court has denied several of Mr. Easley's motions. (Doc. 147).

have engaged in prosecutorial misconduct and have run afoul of *Brady v. Maryland*, 373 U.S. 83 (1963), by not producing all exculpatory evidence in a timely manner. *See also Giglio v. United States*, 405 U.S. 150 (1972).

"It is well established that 'dismissal of an indictment for prosecutorial misconduct is an extreme sanction which should be infrequently utilized.'" *United States v. Acceturro,* 858 F.2d 679, 681 (11th Cir. 1988) (quoting *United States v. Pabian,* 704 F.2d 1533, 1536 (11th Cir. 1983)).  A district court exercises its discretion in resolving a motion to dismiss based on alleged *Brady* violations. *U.S. v. Jordan*, 316 F.3d 1215, 1248-49 (11th Cir. 2003).  A district court must decide whether conduct by government attorneys prevented the defendant from preparing his defense, thus infringing upon the defendant's Fifth Amendment due process right to a fundamentally fair trial and his Sixth Amendment right to effective assistance of counsel. *Jordan*, 316 F.3d at 1248.

In deciding a motion to dismiss an indictment for discovery violations, a district court's "starting point is Rule 16(a) of the Federal Rules of Criminal Procedure, which spells out the materials the prosecution must produce on the defendant's request." *Jordan*, 316 F.3d at 1249. Rule 16(a)(1)(D) states that the government must furnish the defendant a copy of his prior criminal record if in existence; Rule 16(a)(1)(E) states that the government must permit the defendant to inspect certain tangible objects if within the governments possession, custody, or

control, if the object is material to preparing the defense, the government intends to use said item in its case-in-chief at trial, or the item was obtained from or belongs to the defendant; Rule 16(a)(1)(F) states that the government must allow a defendant to inspect results or reports of any physical or mental test or scientific test if the government possesses the item and it is material to preparing the defense or the government intends to use the item in its case-in-chief at trial; and Rule 16(a)(1)(G) states that the government must supply, at the defendant's request, a summary of testimony the government intends to use under Fed. R. Evid. 702, 703, 705 during its case in chief at trial. Fed. R. Crim. P. 16(a)(1)(A-G).[2]

Beyond Rule 16, the government must respect a defendant's right to due process. *Brady*, 373 U.S. at 83. Under *Brady*, the government must disclose to the defendant evidence that is favorable to him even if Rule 16 does not obligate the government to produce the evidence. *United States v. Newton*, 44 F.3d 913, 918 (11th Cir. 1995). *Brady* and its progeny do not create a broad constitutional right to discovery, but due process does oblige the government to disclose evidence material

---

[2] Concerning the materiality element of Rule 16(a)(1)(E), a defendant must show that the object at issue is material to the preparation of his defense. *See Jordan*, 316 F.3d at 1250 (citing *United States v. Carrasquillo-Plaza*, 873 F.2d 10, 12-13 (1st Cir. 1989); *United States v. Cadet*, 727 F.2d 1453, 1466 (9th Cir. 1984)). A defendant also must show that the requested evidence will be helpful in his defense, meaning relevant but not necessarily exculpatory. *See Jordan*, 316 F.3d at 1250 (citing *United States v. Olano*, 62 F.3d 1180, 1203 (9th Cir. 1995)).

to a defendant's case. *See United States v. Bagley*, 473 U.S. 667, 678 (1985); *see also Kyles v. Whitley*, 514 U.S. 419, 434 (1995).

For purposes of *Brady* disclosures, the "touchstone of materiality is a 'reasonable probability' of a different result." *Kyles*, 514 U.S. at 434. "A 'reasonable probability' of a different result" is shown "when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Kyles*, 514 U.S. at 434 (quoting *Bagley*, 473 U.S. at 678). The materiality element of *Brady* has two parts. First, a district court must weigh the materiality of the evidence omitted from production piece by piece. Second, a district court must weigh the omitted evidence in the context of the totality-of-the-circumstances to determine whether there is a reasonable probability that the evidence, in combination, could have produced a different outcome at trial such that the defendant suffered prejudice because the government withheld the evidence. *Smith v. Sec., Dept. of Corrections*, 572 F.3d 1327, 1346-47 (11th Cir. 2009).

Here, Mr. Easley's contentions about pretrial *Brady* violations separately and in combination do not warrant dismissal of the superseding indictment. The first major discovery issue Mr. Easley raises concerns pages he contends were "missing" from paper discovery that the government provided to him on March 16, 2021, after

Mr. Easley chose to defend himself. (Doc. 69, p. 1).[3]  Earlier in the case, the government had provided a set of paper discovery to Mr. Easley's court-appointed counsel. (Doc. 69, p. 2). As discussed in several hearings in this case, the pages that the government omitted when it first provided paper discovery directly to Mr. Easley contained information concerning Mr. Easley's criminal history, information relevant to the two 922(g)(1) charges against him. (Doc. 23, pp. 2-4; Doc. 69, pp. 1-3). That information was not relevant to Mr. Easley's suppression hearing, and the government disclosed the missing information in supplemental production in April of 2021, well before Mr. Easley's trial which is scheduled in September 2022. (Doc. 69, pp. 4-5; Doc. 192).[4]  In total, by September 2022, Mr. Easley will have

---

[3] Mr. Easley identified the pages as missing because of gaps in Bates stamp numbers on the pages of paper discovery that the government provided.

[4] Initially, the Court set the original charges against Mr. Easley for trial in May of 2021 because the Speedy Trial Clock expired on May 8, 2021. (Doc. 46, pp. 15-16; *see also* Doc. 20 (setting April 6, 2021 pretrial conference and May 3, 2021 trial date). On March 24, 2021, the Court held a hearing to provide Mr. Easley copies of draft jury instructions, the Eleventh Circuit pattern jury instructions, a penalty sheet, and the pretrial order for his case. (April 24, 2021 minute entry). On March 30, 2021, the government superseded Mr. Easley's indictment and added a new charge against him. (Doc. 23; *see also* Doc. 25). On April 7, 2021, the Court docketed several motions from Mr. Easley including a motion to suppress. (Docs. 26-30). The Court began a hearing on Mr. Easley's first suppression motion on April 15, 2021. (Docs. 31, 39, 139). As discussed below, the Court suspended the hearing, and the Court issued two orders for a psychiatric evaluation of Mr. Easley, one local and one at a BOP facility. (Doc. 139, p. 39; Doc. 56; Doc. 70). Meanwhile, Mr. Easley filed more than 20 motions and notices. (Docs. 34-37, 47-53, 59, 61, 63, 64, 65, 66, 71-78). Mr. Easley returned from his second evaluation in October of 2021. (October 28, 2021 minute entry). The Court set Mr. Easley's suppression motions for hearing on January 5, 2022 to allow time for him to prepare. (Doc. 89). At Mr. Easley's request, the Court converted the January 2022 hearing into a status conference. (Doc. 94). The Court reset Mr. Easley's suppression hearing for February 2022. (Doc. 97). Mr. Easley amended his motion to suppress on February 16, 2022. (Doc. 110). After the hearing at which the Court denied Mr. Easley's motion to suppress, Mr. Easley requested another suppression hearing. (Docs. 122, 150). The Court deemed

had approximately seventeen months to use information about his criminal history to prepare his defense to the felon in possession charges against him. Seventeen months amply cures any prejudice that Mr. Easley initially may have experienced when the government omitted his criminal records from his original set of paper discovery. *See Beale*, 921 F.2d at 1426.

The second alleged *Brady* violation that Mr. Easley identifies concerns disciplinary reports for Mountain Brook Police Officers Khalil Brakes and Craig Fisher, the responding officers for Mr. Easley's first traffic stop. (Doc. 203, p. 1). Mr. Easley contends that at his first suppression hearing in April of 2021, the government presented him with a written reprimand of Officer Fisher which he had not seen before. (Doc. 203, p. 1). Mr. Easley also complains that the government did not disclose disciplinary reports for Officer Brakes and other officers involved in his stops. (Doc. 119, p. 1; *see also* Doc. 176).

As stated in the Court's June 15, 2022, order in this case, Mr. Easley has not suffered prejudice because of delays in the production of this potential impeachment evidence. (Doc. 195). The Court suspended Mr. Easley's April 2021 suppression hearing early in the evidentiary presentation and a short time later ordered a

---

the motion a motion for reconsideration and set that motion for hearing in June of 2022. (Doc. 167). On June 14, 2022, the Court set his case for trial on September 6, 2022. (Doc. 192). Mr. Easley continues to file motions raising a host of issues for the Court's consideration.

psychiatric evaluation for Mr. Easley. (Doc. 39, p. 39; Doc. 56). When the suppression hearing resumed in February 2022, the Court started the hearing from scratch, and Mr. Easley's stand-by attorney questioned Officer Fisher about his disciplinary report. (Doc. 195; *see also* Doc. 148, p. 28). The government filed supplemental discovery regarding Officers Fisher's and Brakes's disciplinary reports on June 9, 2022, several days before a hearing on Mr. Easley's motion for reconsideration of the order denying his motion to suppress. (Doc. 201). Mr. Easley did not need those impeachment materials for the hearing on his motion to reconsider because neither Officer Fisher nor Officer Brakes testified at the hearing.[5] Mr. Easley has the disciplinary records several months in advance of trial to prepare his defense.

The next alleged *Brady* violation regards EMT records from the Mountain Brook traffic stop. (Docs. 35, 51, 203). In April of 2021, Mr. Easley asked to subpoena these records, (Doc. 35), and the Court instructed Mr. Easley's stand-by attorney to obtain the necessary form and provide it to Mr. Easley, (Doc. 44). In May of 2021, Mr. Easley filed a duplicate motion for EMT records which the Court

---

[5] Officer Brakes has left the Mountain Brook Police Department. He attended the first suppression hearing; the Court suspended before either party called him as a witness, (Doc. 39, p. 18; Doc. 139, p. 18). Officer Brakes did not appear at the second suppression hearing, (Doc. 148, p. 26). Therefore, Mr. Easley did not need Officer Brakes's disciplinary records for impeachment at either suppression hearing.

deemed moot per the resolution of Mr. Easley's preceding motion. (Docs. 51, 54). The government provided the EMT records to Mr. Easley on February 25, 2022 at Mr. Easley's second suppression hearing, and Mr. Easley offered the records into evidence. (Docs. 113-1). By his September 2022 trial date, Mr. Easley will have had more than six months to use the records to prepare his defense for trial.

The last two alleged *Brady* violations concern protocols and policies of the Mountain Brook and Birmingham Police Departments. (Doc. 183). The Court addressed this motion, which Mr. Easley filed on June 6, 2022, at Mr. Easley's hearing on June 13, 2022. (Docs. 183, 201). As explained by AUSA Camp during the June 13, 2022, hearing, before the hearing, the government asked the Mountain Brook Police Department to provide its incident to arrest and towing procedures, and the government indicated that it also would request these policies from the Birmingham Police Department. (Doc. 201, pp. 21-22). The Court has no information that indicates that the government has received these policies and provided them to Mr. Easley. These policies are not *Brady* evidence that prosecutors typically must produce to satisfy their obligations under *Brady*. (Doc. 28). Mr. Easley may wish to use the policies to argue that the searches of his vehicles were improper. That is a suppression argument, not a trial argument. If the policies become available, the Court will consider any constitutional arguments that Mr. Easley may wish to present regarding the policies.

Having considered the alleged *Brady* violations individually, the Court considers the evidence in combination to determine whether the totality of the evidence suggests prejudice to Mr. Easley that warrants dismissal. *Smith*, 572 F.3d at 1346. Because Mr. Easley's case still is at a pretrial stage and Mr. Easley now has the evidence he requested, other than the police department policies, Mr. Easley cannot be harmed at trial because he has the evidence that the government originally collected and the additional evidence that the government has gathered at Mr. Easley's request. Moreover, to the extent that any of the evidence at issue may be relevant to Mr. Easley's suppression motions, the Court already has given Mr. Easley multiple opportunities to be heard, and the Court will hear from Mr. Easley should he receive new evidence that he can use to support his suppression motions. (Docs. 28, 35, 51, 160, 185, 203).

Therefore, the Court declines to exercise its discretion to dismiss the superseding indictment in this case. The Court asks the Clerk to please term Docs. [119], [183], [185] and [203].

**DONE** and **ORDERED** this July 28, 2022.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE