# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | **Case No.: 2:20-cr-000270-MHH-SGC-1** |
| } | |
| **DEVON MARTEZ EASLEY,** } | |
| } | |
| **Defendant.** } | |
| } | |
| } | |

## MEMORANDUM OPINION AND ORDER

"The Sixth Amendment to the United States Constitution gives criminal defendants both the right to counsel and the right to represent themselves." *United States v. Owen*, 963 F.3d 1040, 1048 (11th Cir. 2020) (citing *Faretta v. California*, 422 U.S. 806, 819-20 (1975)). Mr. Easley opted early in this case to represent himself, and he has maintained his clear and unequivocal, knowing, intelligent, and voluntary choice throughout these proceedings despite numerous conversations about the risks inherent in his decision.[1]

---

[1] There is one quasi-exception to Mr. Easley's self-representation which the Court will explain.

Constitutional rights have their limits, and the Sixth Amendment right to self-representation is no exception.[2]  In *Faretta*, the United States Supreme Court stated: "the trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct." *Faretta*, 422 U.S. at 834 n.46 (citing *Illinois v. Allen*, 397 U.S. 337 (1970)).[3]  The Supreme Court added that a court may appoint an attorney "to represent the accused in the event that termination of the defendant's self-representation is necessary." *Faretta*, 422 U.S. at 834 n.46 (citing *United States v. Dougherty*, 473 F.2d 1113, 1124-26 (D.C. Cir. 1972)).  For the reasons that follow, the Court finds that by his obstructionist conduct, Mr. Easley has waived his right to represent himself in these proceedings.  Therefore, the Court will appoint an attorney to represent Mr. Easley through trial.

I.

The path to the Court's *Faretta* order has unfolded over approximately 18 months.  On February 12, 2021, Mr. Easley was arrested on the initial charges in this case. (Doc. 4).  He has been detained since his arrest. (Docs. 5, 9).  Initially, the

---

[2] *See United States v. Dougherty*, 473 F.2d 1113, 1125 (D.C. Cir. 1972) (stating that "even constitutional litigation prerogatives of a defendant are available to give choice in the conduct of a trial, and do not extend so far as to permit subversion of the core concept of a trial") (citing *Illinois v. Allen*, 397 U.S. 337 (1970)).

[3] In *Allen*, the Supreme Court gave trial courts discretion to take various steps to address conduct by a defendant during court proceedings that is "disruptive, contumacious, [and] stubbornly defiant." 397 U.S. at 343.

Federal Public Defender appeared for Mr. Easley. (Docs. 6, 7). Three weeks after their initial appearance, Mr. Easley's attorneys moved to withdraw. (Doc. 13). At a hearing on the motion, the magistrate judge conducted a *Faretta* colloquy, and Mr. Easley waived his right to counsel and began representing himself. (Docs. 17; Doc. 38, pp. 20-26). The Court appointed standby counsel for Mr. Easley. (Doc. 17).

Mr. Easley filed a motion to suppress, and the Court began an evidentiary hearing on the motion. (Doc. 139). The Court had to suspend the suppression hearing because Mr. Easley got into a heated argument with his standby attorney during a break in the hearing, and deputy marshals removed Mr. Easley from the courtroom. (Doc. 70, pp. 3-4; Doc. 139, pp. 38-39). Mr. Easley reported his initial standby attorney to the Alabama State Bar. (Doc. 161, p. 15). The Court appointed a new attorney to serve as Mr. Easley's standby counsel. (April 26, 2021 minute entry).

In short order, Mr. Easley reported his second standby attorney to the Alabama State Bar, in part because he did not feel she came to jail frequently enough to meet with him. (Docs. 61, 63; Doc. 83, pp. 2, 4-7). During most of the time that Mr. Easley's second standby attorney worked with him, Mr. Easley was in another state participating in an evaluation that the Court ordered pursuant to 18 U.S.C. § 4241. (Docs. 70, 87).[4] The Court appointed Mr. Easley's third standby attorney on

---

[4] For details concerning the reasons for the evaluation, please see Doc. 70.

September 24, 2021. (Doc. 85). That attorney assisted Mr. Easley during his second suppression hearing. Because of the difficulty Mr. Easley had during his first suppression hearing, the Court proposed to Mr. Easley that he allow his standby attorney to take the lead in questioning witnesses during the suppression hearing; Mr. Easley agreed. (Doc. 148, p. 3). A few days after the suppression hearing, Mr. Easley asked the Court to remove his third standby attorney because he felt she was ineffective. (Doc. 115). Mr. Easley then reported his third standby attorney to the Alabama State Bar. (Doc. 161, p. 15).

Before the Court appointed Mr. Easley's fourth standby attorney, the Court described to Mr. Easley the consequences he would face if he reported another attorney to the Alabama State Bar. The Court stated:

> I can't keep putting lawyers in this position. Because, Mr. Easley, what the record shows is that you aren't satisfied with any lawyer who the Court appoints to represent you.
>
> Mr. Brower was randomly appointed. With respect to Ms. Barnes and Ms. Wallace, we reached out to lawyers who we thought would do an excellent job for you, and you haven't been satisfied with either one of them. And as I said, I can't have lawyers come in one after another after another to have you report them to the Alabama State Bar and then ask for a new lawyer.
>
> Let me read some language to you from a Supreme Court opinion. This is the *McKaskle* opinion. It's *McKaskle* versus *Wiggins*. It's found at 465 United States 16[8], 1984. The Court in that case was talking about whether a judge can remove a defendant altogether from a trial because

> of disruptive behavior, and the Court ends up saying, it is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country. The flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated. We believe trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case. No one formula for maintaining the appropriate courtroom atmosphere will be best in all situations.
>
> And the Court essentially says that judges have discretion to work through their cases with criminal defendants representing themselves up to the point of even being able to appoint a lawyer to handle the case for the defendant over the defendant's objection.
>
> And [] this cycle of appointing and then reporting to the State Bar standby counsel has become disruptive of these proceedings.
>
> So either I'm going to appoint a lawyer to represent you and you're just going to have this case go forward like any other case that's a represented case, or you can continue to represent yourself. I just can't keep appointing standby counsel for you to have for a month or two before you report them to the State Bar.

(Doc. 161, pp. 15-17).  Mr. Easley asserted that he still wanted standby counsel.

(Doc. 161, p. 21).  The Court responded:

> If I appoint new standby counsel for you and this appointment doesn't work out, then I'm either going to appoint a lawyer to take over your case and you will not be able to represent yourself anymore, or you will have to proceed without standby counsel. It will be one or the other, but I will not keep up this delay of the rotation of standby counsel who you then report to the State Bar.

(Doc. 161, p. 21).  The Court then appointed Mr. Easley's fourth standby attorney.

(Doc. 161, p. 52; *see also* Doc. 142).

One week after the Court appointed Mr. Easley's fourth standby attorney, Mr. Easley prepared a motion for his standby attorney to visit him.  (Doc. 152) (motion drafted April 26, 2022).  One week after that, Mr. Easley prepared a motion in which he asked the Court to prohibit Zoom meetings with standby counsel.  (Doc. 154) (motion drafted May 3, 2022).  This is the first of a series of motions the defendant signed "King Devon Easley."  (Doc. 154; *see also* Docs. 155, 156, 157, 158, 159).

The Court held a hearing on May 13, 2022 to discuss these and other motions that Mr. Easley submitted.  (Doc. 170).  During the hearing, Mr. Easley's fourth standby attorney placed on the record the amount of time she had spent with Mr. Easley since her appointment.  She stated that she met with Mr. Easley in jail on April 29 for nearly three hours; participated in a May 3 Zoom conference with Mr. Easley; met with Mr. Easley in jail on May 6 for nearly three hours; and had two 15-minute telephone calls with Mr. Easley in the two days leading to the May 13 hearing.  (Doc. 170, pp. 19-20; *see also* Doc. 187, pp. 1-2).  The hearing included the following exchange between the Court and Mr. Easley:

> The Court:  It sounds like Ms. Luker is working very hard on your behalf, Mr. Easley, to stay in the role of standby counsel, but also to help you navigate some of the challenges that you may have in representing yourself. So remember at our last hearing I told you that if this opportunity to work with standby counsel doesn't go well that there won't be another opportunity.
>
> Mr. Easley:  I remember that conversation.
>
> The Court:  Pardon me?

> Mr. Easley: I do remember that conversation.
>
> The Court: So before things get in bad shape, if you want the chance to work with standby counsel, you should let the Court know that we need to talk about something and we will talk about it as soon as we can make arrangements to do so.
>
> Ms. Luker, does that sound manageable to you?
>
> Ms. Luker: Yes, Your Honor. And if it becomes an issue, then either Mr. Easley or I will let the Court know.

(Doc. 170, pp. 33-34).

Less than one month later, Mr. Easley's fourth standby counsel filed a motion to withdraw. (Doc. 187). In the motion, Ms. Luker explained that she met with Mr. Easley on May 25, 2022 for approximately 1.5 hours. (Doc. 187, p. 2). Toward the end of the meeting, Mr. Easley insisted that Ms. Luker withdraw as standby counsel. (Doc. 187, p. 2 n.1). After that meeting, the Alabama State Bar notified Ms. Luker that Mr. Easley had filed a complaint against her. (Doc. 187, p. 4). Mr. Easley dated the complaint May 21, 2022; the Alabama State Bar received the complaint May 26, 2022. (Doc. 187, p. 4; Doc. 188, pp. 2, 3; Doc. 201, p. 10). Thus, Mr. Easley prepared an Alabama State Bar complaint against his fourth standby attorney one week after the Court reminded him of the consequence he would face if he reported another attorney to the Alabama State Bar. The Court released Ms. Luker from service and held that Mr. Easley no longer could have standby counsel. (Doc. 201, p. 10).

Two weeks later, Mr. Easley filed a motion in which he asked the Court to appoint standby counsel to represent him. (Doc. 196).[5] The Court denied the motion. (Doc. 209, p. 5 n.3).

During the hearing in which the Court released Mr. Easley's fourth standby attorney, the Court heard Mr. Easley's arguments in support of his motion to reconsider the Court's order denying his motions to suppress. Following that hearing, the Court issued orders, (Docs. 207, 209, 212), disposing of several motions that Mr. Easley had filed, including Mr. Easley's motion to reconsider, (Docs. 119, 122, 150, 158, 180, 183, 185, 196, 203, 204).[6]

The Court then set Mr. Easley's case for a pretrial conference in anticipation of Mr. Easley's September 6, 2022 trial date.[7] The Court scheduled the hearing for just over one week after the Court issued its last opinion to give Mr. Easley time to receive the three recent opinions in the mail. (Doc. 214). When the Court set the pretrial conference, the Court had pending before it a motion from Mr. Easley for a

---

[5] In his motion, Mr. Easley asserted that the undersigned judicial officer had conspired with previous standby counsel to deprive him of "the proper information needed to defend [his] case." (Doc. 196, p. 1). In conclusion, Mr. Easley stated: "But God is a mighty God and he has the last say so. Thus saith the Lord; vengeance is mine." (Doc. 196, p. 1). Mr. Easley signed this motion "King Devon Easley." (Doc. 196, p. 1).

[6] To date, Mr. Easley, without the assistance of counsel, has filed 66 motions and seven notices in this case.

[7] The Court initially set Mr. Easley's case for trial on May 3, 2021. (Doc. 20). The Court has postponed trial dates on several occasions at Mr. Easley's request. (Docs. 192, 211, 220).

status conference. (Doc. 213).[8] Days before the pretrial conference, the Court received from Mr. Easley a motion to continue the September 6, 2022 trial date. (Doc. 216).

At the outset of the pretrial hearing, Mr. Easley asked for a continuance of the hearing. (Doc. 221, p. 3). He stated: "I don't know what the hell – excuse my French, but I'm not prepared for this." (Doc. 221, p. 3). The Court asked Mr. Easley which of the three recent opinions, (Docs. 207, 209, 212), he had received in jail, (Doc. 221, p. 3). He stated that he had received only Doc. 207; he received Docs. 209 and 212 when he arrived at the courthouse. (Doc. 221, p. 4).[9] When asked what he had been doing to prepare for trial, Mr. Easley replied:

> Mr. Easley: I've kind of been submerged in one room up until now, is the only freedom that I have gotten besides walking to the shower. So nothing.
>
> The Court: So you haven't done anything yet to prepare for trial.
>
> Mr. Easley: No, ma'am.

---

[8] Mr. Easley dated the motion July 1, 2022. (Doc. 213). The Clerk docketed the motion August 3, 2022. (Doc. 213).

[9] In anticipation of the August 11, 2022 pretrial conference, the Court asked the Courtroom Deputy to please print copies of Docs. 207, 209, and 212 to provide to Mr. Easley when he arrived at the courthouse. The Court also asked the Courtroom Deputy to print the most recent copy of the docket sheet for Mr. Easley and a copy of an *ex parte* order that Judge Cornelius issued on August 10, 2022, (Doc. 217). Mr. Easley indicated that he had "scanned through" the orders before the August 11, 2022 hearing started. (Doc. 221, pp. 4-5).

(Doc. 221, pp. 5-6).  He continued:  "I want to get my trial over with, but there's only so much I can do as an inmate at the prison."  (Doc. 221, p. 6).

With respect to trial preparation, Mr. Easley stated that the jail recently had taken the tablet which belonged to the Federal Public Defender on which the Federal Public Defender had saved the dashcam and bodycam evidence in Mr. Easley's case so that Mr. Easley could review the evidence in jail.  As a result, Mr. Easley asserted that he no longer could review the dashcam and bodycam video from the two traffic stops at issue.  (Doc. 221, p. 7).[10]  Mr. Easley acknowledged that he had his paper discovery with him in his cell, but he indicated that he had been in segregation since February 5, 2022, and that the other individuals housed in segregation made noise that distracted him when he tried to prepare for trial.  (Doc. 221, pp. 8, 14-15).  The

---

[10] At a hearing in this case in March of 2021, the Court discussed with Mr. Easley the challenges that he faced reviewing video evidence as a detained arrestee.  (Doc. 46).  At the conclusion of the hearing, the Court was aware of two options available to Mr. Easley for reviewing the video evidence – either reviewing the evidence at the jail with his standby attorney or reviewing the evidence at the courthouse with the AUSA or the AUSA's paralegal present.  Mr. Easley stated that he preferred the latter option to the former; he did not want to review the video evidence with standby counsel.  (Doc. 46, p. 40).  Realizing the problems inherent in the option Mr. Easley selected, the Court looked for alternative means to provide the video evidence to Mr. Easley.  The situation was complicated by the fact that activity at the jail where Mr. Easley was housed was limited because of the pandemic.  After consulting with the Federal Public Defender, the FPD agreed to download the video evidence onto one of the FPD's tablets, configure the tablet so that it would operate only locally (i.e. would not provide internet access), and loan the tablet to Mr. Easley so that he could review the video evidence when the jail gave him time to use the tablet.  (Doc. 221, pp. 15-16).  The jail kept records of the dates and the amount of time Mr. Easley spent working on his case.  Mr. Easley had the tablet from the spring of 2021 through his second suppression hearing on February 25, 2022, (Doc. 148), and the June 13, 2022 hearing on his motions to reconsider the order denying his motions to suppress, (Doc. 170).

Court offered to appoint counsel to represent Mr. Easley; Mr. Easley replied that he wanted standby counsel, but he did not want an attorney to represent him. (Doc. 221, p. 8). The Court advised Mr. Easley that he had exhausted his opportunity for standby counsel and explained that the Court would appoint an attorney only for trial to help Mr. Easley present documents to witnesses and to the Court. (Doc. 221, pp. 8-9). The Court explained to Mr. Easley why he could not select his attorney if he could not afford to hire an attorney. (Doc. 221, pp. 12-13). Mr. Easley replied: "I know you say y'all go by procedures. The procedure kind of sucks." (Doc. 221, p. 13).

The Court began asking Mr. Easley if he was ready to proceed to trial in September. Each time the Court asked, Mr. Easley tried to redirect the conversation. (Doc. 221, pp. 14-15; 17; 19-21). For example, the fourth time the Court asked Mr. Easley if he "want[ed] to go to trial in September," Mr. Easley responded: "I've still got a couple of questions because, you know. Why are you trying to rush me through this process?" (Doc. 221, p. 22). Mr. Easley then began asking the Court for legal advice. The Court explained to Mr. Easley that it could not answer his questions, but the Court could appoint a lawyer to represent him. Mr. Easley asked for standby counsel again, and the Court again reminded Mr. Easley that he had waived his opportunity to work with standby counsel. (Doc. 221, pp. 23-24). The Court asked

Mr. Easley several times what else he would like to discuss before discussing a trial date. Each time, he raised a new topic. (Doc. 221, pp. 25-26).

When Mr. Easley returned to questions about a witness he could not locate, a topic the Court already had covered during the hearing, the Court concluded that Mr. Easley was trying to avoid the Court's effort to set a trial date. Therefore, the Court notified Mr. Easley that the Court might follow *Faretta* and appoint an attorney to represent him. The Court stated:

> I absolutely agree with your statement earlier today that patience is a virtue, and the Court has an obligation to listen to all of your arguments and to respond to them. At some point, though, this Court may make a finding that you are being an obstructionist, and upon making that finding, the Court will appoint an attorney to handle this case for you. I have advised you of that once in a hearing before. That's the language from the *Faretta* decision. I also included that language in -- I believe it's document 209, in a footnote. And typically that finding of obstructionist behavior is made during trial. I haven't found authority that says that a judge can make that finding pretrial. But if we can't get a trial date and get your case to trial, I'm going to make that finding pretrial.

(Doc. 221, p. 32). Mr. Easley then began asking again how he could review video evidence to prepare for trial. (Doc. 221, pp. 32-33). The Court again asked Mr. Easley several times if he was ready to set a trial date. (Doc. 221, p. 33). Mr. Easley finally replied: "I'm trying to, but you won't allow me." (Doc. 221, p. 33). The Court then found that Mr. Easley was an obstructionist and indicated that it would appoint an attorney to represent Mr. Easley through trial. (Doc. 221, p. 34). The Court stated that it would randomly select an attorney to represent Mr. Easley from

the Court's CJA panel and that the attorney would speak for Mr. Easley going forward. (Doc. 221, pp. 34-35). The Court continued the September 6, 2022 trial date to give Mr. Easley's new attorney time to prepare for trial. (Doc. 221, p. 35; Doc. 220).

## II.

Throughout his case, Mr. Easley has made a record of the challenges that detained defendants face when they choose to exercise their right to represent themselves. In this district, detained defendants do not have access to resources like Westlaw or Lexis or a law library. Therefore, it is difficult for detained defendants to conduct legal research independently. Though perhaps not the perfect solution, standby counsel may provide *pro se* criminal defendants significant help as they prepare their defense; a trial judge may not help a *pro se* defendant prepare his defense. A detained defendant who, by his conduct, declines the assistance of standby counsel faces significant hurdles as he prepares for trial.

Challenges notwithstanding, there is a process that courts and parties must follow to resolve criminal cases. The public has an interest in the resolution of these cases, and a defendant, by his conduct, may not frustrate that interest. As the Supreme Court stated many years ago in *Illinois v. Allen*, a defendant's Sixth Amendment rights do not handicap a trial judge. *Illinois*, 397 U.S. at 342. A defendant may lose his Sixth Amendment rights if, after being "warned by the judge

that he will" forfeit his rights, he "continues his disruptive behavior" and "insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court" that the court cannot proceed in his case. *Illinois*, 397 U.S. at 343. To maintain order, a trial judge may, among other things, find that a *pro se* defendant has waived his right to self-representation and may appoint an attorney to represent the defendant. *Faretta*, 422 U.S. at 834 n.46.

The Court has a responsibility to ensure that this case proceeds to trial and is ultimately resolved. *See Allen*, 397 U.S. at 346-47. The record demonstrates that the Court cannot fulfill its responsibility if Mr. Easley continues to represent himself. Mr. Easley is either unwilling or unable to prepare for trial without the help of an attorney, but, by his conduct, Mr. Easley has forfeited his opportunity to work with standby counsel. Having backed himself into a corner, Mr. Easley now appears to be attempting to avoid trial altogether, as evidenced by his unwillingness to discuss a trial date over the course of a lengthy hearing. "[T]he accused [cannot] be permitted by his disruptive conduct indefinitely to avoid being tried on the charges brought against him." *Allen*, 397 U.S. at 346. Therefore, left without other options – and to fulfill its responsibility to Mr. Easley, the public, and the justice system – the Court will exercise the authority available to it under *Faretta*, appoint counsel to represent Mr. Easley, and set a status conference to schedule a trial date with Mr.

Easley's attorney. The Court realizes that appointing an attorney to represent Mr. Easley may not eliminate all disruptions, but the Court must move this case forward.

Accordingly, the Court directs the Clerk of Court to please randomly select a CJA attorney to represent Mr. Easley in this case. That lawyer shall speak for Mr. Easley through trial. If Mr. Easley is convicted, the Court will evaluate then whether Mr. Easley may represent himself during the sentencing phase of this case.

**DONE** and **ORDERED** this August 23, 2022.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE